IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KATHY D. KOBYLENSKI, )
)
    Plaintiff, )
)
) CIV-13-1300-L
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
  Security Administration, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act.[1] Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application on August 7, 2009 (protective filing date), and alleged that she became disabled on that date due to mental impairments and human

---

[1] At her administrative hearing, Plaintiff withdrew her application for disability insurance benefits.

1

immunodeficiency virus ("HIV") infection.[2] (TR 171, 175). In a function report dated September 11, 2009, Plaintiff stated that she was injured in 1971 at age 7 when she was hit by a car and that she suffered severe brain damage as a result of her injuries. (TR 198). According to Plaintiff's statements in the record, her husband died in 1996, and she received survivor's benefits until approximately 2008. (TR 430, 567).

Plaintiff has a high school equivalency degree. (TR 373). Plaintiff reported that she previously worked as an exotic dancer from 1985 to 1998 and that she worked for an unknown period of time as a waitress. (TR 208, 287). Plaintiff had very little reported earnings. (TR 149).

Plaintiff stated that she tested positive for HIV infection in 1996, and Plaintiff has been regularly monitored and treated at the University of Oklahoma's Infectious Disease Institute ("IDI") for her HIV infection beginning in February 2001. (TR 258). In June 2008, Plaintiff reported to her treating clinic that she had been arrested for possession of illegal substances. (TR 290). She later advised a treating mental health professional that she had been arrested in 2007 for possession of "crack" cocaine and had been placed on probation for five years. (TR 567).

Plaintiff reported in May 2009 that she had not abused drugs for one year and that she was providing care for 3 teenagers as well as her teenaged daughter. (TR 340). In April 2010, Plaintiff reported that her daughter continued to receive survivor's benefits and that

---

[2]At her administrative hearing, Plaintiff amended her alleged disability onset date to August 7, 2009. She previously asserted that she became disabled on June 30, 1997. (TR 141).

she was paying the family's bills with these benefits. (TR 430). At that time, she was caring for her 18-year-old niece and her eleven and twelve year old nephews as well as her daughter. (TR 430). In August 2010, Plaintiff reported that she had custody of two nephews and would be getting custody of her niece. She reported that her daughter, her boyfriend, and a friend also lived with her. (TR 395).

In a consultative psychological evaluation conducted in December 2009, Dr. Rodgers, Psy.D., diagnosed Plaintiff with major depressive disorder, moderate, panic disorder, and possible borderline intellectual functioning. (TR 373). In a consultative psychological evaluation conducted in April 2010, R. Keith Green, Ph.D., conducted psychological testing and diagnosed Plaintiff with borderline intellectual functioning and possible learning disorder. (TR 429-431).

In September 2010, Dr. Stanton, her treating physician at the IDI clinic, diagnosed Plaintiff with dementia due to head trauma and unspecified depressive disorder. (TR 393). Beginning in March 2011, Plaintiff was treated with medications for osteoporosis in her lumbar spine and severe osteopenia in her right hip that had been revealed by x-ray testing. (TR 486, 493).

In September 2010, Plaintiff was treated by Dr. Stanbro at the IDI clinic, and Dr. Stanbro noted Plaintiff reported hearing "voices" that belittled her but were non-commanding. Dr. Stanbro noted normal mental status findings and increased her anti-depressant and mood-stabilizing medications. (TR 499-500). The diagnosis was dementia due to head trauma with psychotic features, unspecified depressive disorder, and dependent

3

traits. (TR 500).

In December 2010, Dr. Stanbro noted that Plaintiff reported decreased auditory hallucinations and that she had recently traveled to another state to spend time with family. (TR 497). Plaintiff rated her mood as 8/10, and Dr. Stanbro noted her mental status findings were normal. (TR 497-498).

Plaintiff underwent surgery in April 2011 conducted by Dr. Smith, a podiatrist, to repair a plantar flexed toe and a neuroma in her left foot. (TR 503-505). Her recovery from this surgery was uneventful, and Plaintiff reported to Dr. Smith in May 2011 that she was very pleased with the result and experiencing minimal discomfort. (TR 506).

In June 2011, Plaintiff reported to her treating IDI clinic that she was "doing well" and had attended a family wedding and visited her mother, and she was also "doing well" on her medications. (TR 512). A neurosurgeon, Dr. Rabb, examined Plaintiff in July 2011 and noted that she complained of left shoulder pain. She exhibited full strength on examination but decreased sensation on her left side. (TR 528). Dr. Rabb advised Plaintiff to obtain an MRI for further evaluation of her shoulder pain complaints. In July 2011, Plaintiff's treating family physician noted that Plaintiff reported experiencing chest pain for one month, which the physician noted was anxiety-related. (TR 525). The physician also noted that EKG testing of Plaintiff was normal. (TR 525).

In October 2011, Plaintiff was treated at the IDI clinic by Dr. Salinas, who noted that she admitted missing a few doses of her HIV anti-viral medication and that a physical examination was normal. (TR 544-545). Dr. Salinas also noted normal mental status findings

4

and noted that Plaintiff "[c]ontinues to do well immunologically" on her anti-viral treatment regimen. (TR 546).

In a hearing conducted on June 29, 2011, before Administrative Law Judge Shepherd ("ALJ"), Plaintiff and a vocational expert ("VE") testified. (TR 27-65). The ALJ issued a decision on December 20, 2011, in which the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act between the date she filed her application and the date of the decision. (TR 15-26).

Following the agency's well-established sequential evaluation procedure, see 20 C.F.R. § 416.920(b)-(f); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 7, 2009. (TR 19). At step two, the ALJ found that Plaintiff had severe impairments due to HIV positive status, osteopenia/osteoporosis, neck pain due to degenerative disc disease of the cervical spinal region, osteoarthritis, status post surgery to correct plantar flex third metatarsal and neuroma second intermetatarsal space left foot, chronic obstructive pulmonary disease ("COPD"), mild dizziness as a side-effect of medication, recurrent major depressive disorder, anxiety disorder, and borderline intellectual functioning. (TR 19).

With respect to the severity of Plaintiff's mental impairments, the ALJ found that Plaintiff's mental impairments had resulted in mild restrictions in activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation for extended periods of time. (TR 20). At step

three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment.

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with the following limitations: "She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead. She is to avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery. She can understand, remember, and carry out simple, routine, and repetitive tasks. She can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public. She cannot perform production-line or assembly-line work." (TR 21). Relying on the VE's testimony, at the fifth and final step the ALJ found that Plaintiff was not disabled as she retained the capacity to perform jobs available in the economy, including the jobs, as identified by the VE at the hearing, of price marker, laundry sorter, and garment assembler. (TR 25).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Evaulation of Medical Opinions

Plaintiff contends that the ALJ erred in evaluating the medical opinions in the record. First, Plaintiff argues that the ALJ ignored important evidence that was consistent with the opinion of Dr. Rodgers and also failed to properly evaluate Dr. Rodgers' opinion. Plaintiff points to Dr. Rodgers' opinion, included in her report of her December 9, 2009 consultative psychological evaluation of Plaintiff, that Plaintiff has "significant difficulty managing her anxiety and it seems unlikely that she would be able to sustain concentration and focus in any type of work-related activities."[3] (TR 373). Dr. Rodgers stated that her diagnostic impressions were based solely on Plaintiff's clinical presentation, her subjective complaint, and her reported/documented history. (TR 373). Dr. Rodgers recommended diagnostic testing and "the acquisition of complete background records" to ascertain Plaintiff's functional abilities. (TR 373).

---

[3]Plaintiff misreads the record when she states that Dr. Rodgers' opinion was that Plaintiff had "significant difficulty managing activity. . . ." Plaintiff's Opening Brief, at 5.

7

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). See Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003)(ALJ is required to consider the opinions of non-treating physicians and to provide specific, legitimate reasons for rejecting such opinions)(citing, e.g., 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, *1). The agency's regulations identify specific factors the ALJ should consider in deciding the weight to give to a medical opinion, such as the consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(c).

The ALJ's decision reflects thorough consideration of Dr. Rodgers' report and the opinions expressed therein. (TR 17-18). The ALJ found that, for the reasons stated in the decision, Dr. Rodgers' assessment of Plaintiff's work-related ability was "not supported by the medical[ly] acceptable evidence and/or consistent with the other substantial evidence of record." (TR 23). The ensuing discussion in the decision appears to conflate the evaluation of Dr. Rodgers' opinion with the assessment of Plaintiff's credibility. Nevertheless, the ALJ's decision provided sufficient reasons that are well supported by the record for discounting Dr. Rodgers' opinion. The ALJ specifically pointed to and cited evidence in the record showing that "during treatment of her positive HIV status, [Plaintiff] has persistently been described [as] cooperative and alert and her mental status examinations persistently described as exhibiting normal mood, mental orientation, thought processes, intellectual functioning, reasoning, memory, concentration, focus, social interactions, behavior,

8

judgment, and insight." (TR 23-24). The ALJ also pointed out that Plaintiff's treating physicians typically described her mental impairments to be mild to moderate severity. (TR 24).

The ALJ further pointed to the April 2010 consultative psychological evaluation of Plaintiff conducted by Dr. Green, who opined that Plaintiff was functioning at the borderline intellectual level and exhibited generally normal mental functions.[4] (TR 24). The ALJ also reasoned that

> [a] review of the activities of daily living show her adaptive functions to appear to be somewhat higher than borderline level. The claimant reports and testified that she cares for her niece and two nephews; cares for pets, is fully independent in her personal care needs; obtained a GED; obtained a driver['s] license without restrictions; drives; fixes limited meals; helps with household chores; shops; does basic math; make[s] change; pays bills; handles bank accounts; get[s] alon[g with] others; reads; does word puzzles, plays cards, watches television; and attends a weekly recovery group.

(TR 24). The ALJ also noted that Plaintiff "has fully participated in and mostly complied with medical treatments and decision; availed herself of public benefits and resources; refra[in]ed from the abuse of alcohol, marijuana, and illicit drugs; and maintained family relationships and friendships." (TR 24).

Plaintiff asserts that the ALJ ignored consistent evidence that appeared in the record in the observations of an agency employee. This employee noted that during the application

---

[4]The ALJ's decision does not include the term "normal" in describing Dr. Green's report. However, it is safe to assume from the context of the phrase used in the decision that the ALJ inadvertently left out this term.

9

interview Plaintiff "had some problems answering all of my questions" during the interview. (TR 172). This nebulous statement by an agency employee does not provide probative or consistent evidence that should have been considered by the ALJ.[5]

Plaintiff also points to her own reported symptoms, but the ALJ did not err in failing to consider such subjective statements in determining whether Dr. Rodgers' opinion was consistent with the record as a whole. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Her subjective statements are simply not medical evidence, even if those statements are noted by a treating or examining physician. The ALJ considered the credibility of Plaintiff's subjective statements and determined that those statements were not entirely credible, for reasons stated in the decision and supported by the record.

Plaintiff asserts that Dr. Green's report of his consultative psychological evaluation of Plaintiff provided evidence consistent with Dr. Rodgers' opinion. Dr. Green's report includes the psychologist's opinion, based on diagnostic testing conducted during the evaluation, of Plaintiff's level of intellectual functioning and also includes Dr. Green's impressions that during testing Plaintiff "maintained adequate attention and concentration." (TR 430). This statement is not at all consistent with Dr. Rodgers' opinion that it "seems

---

[5]Plaintiff misreads the record when she states that the agency employee noted Plaintiff had "difficulty with 'understanding.'" Plaintiff's Opening Brief, at 5. The employee noted only Plaintiff's subjective statement that she had a "hard time understanding things," not that the employee OBSERVED Plaintiff to have difficulty with understanding during the interview. (TR 172).

unlikely that [Plaintiff] would be able to sustain concentration and focus in any type of work-related activities." (TR 373). Further, Dr. Green posited that Plaintiff "displayed persistence and good frustration tolerance" and that her difficulties during testing "interfered with her ability to work at an adequate pace." (TR 430). Dr. Green's report was not at all consistent with Dr. Rodgers' opinion that Plaintiff would probably not be able to maintain concentration and focus in any work-related activities. Moreover, the ALJ incorporated Dr. Green's observation that Plaintiff had difficulties with maintaining an adequate pace by adding to the RFC the limitation that Plaintiff would be unable to perform "production-line or assembly-line work." (TR 21).

Because the ALJ's decision provides adequate reasons that are well supported by the record for discounting Dr. Rodgers' opinion concerning Plaintiff's work-related functional abilities, no error occurred with respect to the evaluation of the medical opinion.

Plaintiff next asserts that the ALJ erred in giving "great" weight to the opinions of the agency medical consultants without specifically discussing those opinions. Further, Plaintiff asserts that the ALJ failed to incorporate all of the mental limitations ascribed by an agency consultant into the RFC determination.

In the decision, the ALJ accorded "great weight" to the opinions of the state medical consultants "to [the] extent their opinions are otherwise consistent with" the RFC assessment set forth in the decision. (TR 24). Plaintiff does not indicate in what way the agency's medical consultants' opinions differed with the RFC assessment outside of one instance. Plaintiff argues that one of the agency medical consultants, Dr. Hartley, a psychologist,

opined that Plaintiff "can relate to supervisors and peers on a superficial work basis," (TR 448), and that this medical opinion was not incorporated into the RFC assessment.

The ALJ's RFC assessment included the nonexertional limitations, *inter alia*, that Plaintiff "can respond appropriately to supervisor, co-workers, and usual work situations, but have no contact with the general public." (TR 21). Plaintiff provides no authority for her assertion that the capacity to relate to supervisors and co-workers "appropriately" is not the same as, or differs significantly from, the capacity to relate to those individuals "on a superficial work basis."

Although, as Plaintiff points out, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence," Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004), Plaintiff has not shown any improper "picking and choosing" occurred here. The ALJ might have been more specific by including in the RFC assessment the limitation that Plaintiff could interact appropriately with co-workers and supervisors in at least a superficial manner, or something to that effect, but no error occurred in this case where the agency medical consultant's RFC assessment did not explicitly or implicitly indicate that Plaintiff could not interact appropriately with supervisors and co-workers.

IV. RFC Assessment

Plaintiff next contends that the ALJ erred by failing to include all of Plaintiff's mental and physical limitations in the RFC assessment. However, Plaintiff's argument is based on (1) the opinion of Dr. Rodgers that Plaintiff had concentration and focus difficulties that

12

"seem[ed] unlikely" to allow her to "sustain concentration and focus in any type of work-related activities," (2) the assessment of Dr. Green that Plaintiff's deficiencies during testing interfered with her ability to work at an adequate pace, and (3) Dr. Hartley's assessment that Plaintiff would be able to relate to supervisors and co-workers on a superficial basis. These opinions and assessments have been previously addressed herein, and no error has been found in the ALJ's evaluation of this opinion evidence.

Specifically, with respect to Dr. Rodgers' opinion, the undersigned previously found that the ALJ provided adequate reasons that are supported by the record for rejecting this opinion. With respect to Dr. Green's assessment that during testing Plaintiff experienced difficulties that interfered with her ability to work at an adequate pace, the ALJ incorporated this observation into the RFC assessment by determining that Plaintiff would be unable to perform "production-line or assembly-line work." (TR 21). Finally, the Plaintiff has not shown any error in the ALJ's failure to include the word "superficial" when the ALJ's RFC assessment included the ability to appropriately relate to supervisors and co-workers.

In her final argument, Plaintiff points to a portion of the evidence submitted for the first time by her attorney with her appeal of the ALJ's decision. The evidence on which Plaintiff relies is a Mental Impairment Questionnaire completed by Plaintiff's therapist, Ms. Brody. The questionnaire is dated June 12, 2012, and sets forth check-marked assessments of Plaintiff's mental abilities to perform work-related activities with brief explanations for the assessments. The Appeals Council stated in its decision denying Plaintiff's request for review that all of the evidence submitted by Plaintiff's attorney with the appeal " is about a

later time" and therefore "does not affect the decision about whether you were disabled beginning on or before December 20, 2011," the date of the ALJ's decision. (TR 5).

Plaintiff does not argue that Ms. Brody's assessment was directed to the relevant period of time prior to the ALJ's decision. Nothing in the assessment indicates that it concerned only the period of time before the date of the ALJ's decision. The evidence Plaintiff relies on is irrelevant because it post-dates the ALJ's decision. See 20 C.F.R. §416.1470(b)("[I]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] hearing decision."). Accordingly, the Appeals Council did not err in failing to consider this evidence in connection with Plaintiff's appeal of the ALJ's decision.

The ALJ appropriately obtained vocational testimony at the hearing, and the VE's testimony provides substantial evidence to support the Commissioner's step five decision. Because the Commissioner's decision is supported by substantial evidence in the record, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      January 2nd      , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.

14

Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  12th  day of  December , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE